Willie Press McINTOSH, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Feb. 24, 1961.

Mart V. Mainous, Irvine, for appellant.

Shumate & Shumate, Irvine, John B. Breckinridge, Atty. Gen., Troy D. Savage, Asst. Atty. Gen., for appellee.

MILLIKEN, Judge.

This is an appeal from an adverse ruling on a motion (in the nature of a coram nobis under CR 62.02) to set aside the 1954 conviction of Willie Press McIntosh for willful murder for which he is serving a life sentence in the penitentiary.

■■ The testimony offered as justification for setting aside the conviction is in the form of affidavits and depositions centering principally upon the testimony of Christine Sandlin who was sixteen years of age when she testified at the main trial, and who now declares that her trial testimony was untrue in a vital respect. For such a change in testimony to justify setting aside a conviction, it must appear that the conviction probably would not have been rendered except for the false testimony. The controlling principles were well summarized in Harris v. Commonwealth, Ky. 1956, 296 S.W.2d 700, by Judge Hogg who (at page 703) reaffirmed our view "that the court in which a conviction was had has discretion to grant the writ where it appears that but for alleged false testimony or undiscovered evidence of such a conclusive character that the verdict most probably would not have been rendered and there is strong probability of a miscarriage of justice unless the process be granted. * * * We affirm that it is not enough merely to show that a prosecuting witness has subsequently made contradictory statements or that he is willing to swear that his testimony upon the trial was false, for his later oath is no more binding than his former one. * * * It may be otherwise if the sole witness repudiates his testimony. It is to be emphasized also that obtaining the writ is not a matter of right but the granting of it is a matter of sound judicial discretion to be exercised upon a showing of reasonable certainty."

The appellant had pleaded self-defense at his trial stating that the man he killed, Glen Campbell, picked up a gun and said he would shoot the appellant's heart out "if you pull that gun up there." He was confirmed in this by a youthful witness, John Henry Bowman, who was inside the abandoned school building with Glen Campbell, Oakley Campbell and sixteen year old Christine Sandlin at the time of the shooting. They were in the building for the purpose of drying tobacco. Oakley Campbell and Christine Sandlin testified that Glen

Campbell was unarmed and no gun was available to him in the building. McIntosh who was outside the building at the time he fired the fatal shot through the open window, from a point fifty to one hundred feet away, maintained that Glen Campbell was armed and threatening, that Campbell clicked the safety on his gun, and that he (McIntosh) then fired. Campbell and McIntosh apparently had argued at a respectable distance immediately before the shooting.

In her deposition changing her story to the effect that Campbell was unarmed, Christine Sandlin testified that she was coerced by the Campbell family to testify as she did at the trial, and that she now retracted her story because "it was just bearing on her mind." On cross-examination by the Commonwealth, she admitted that she told the same story in private questioning that she did on the trial and expressed no fear at that time. In the trial testimony of John Henry Bowman, who was eighteen at that time, it was brought out that he told a different story at the examining trial than he did at the main trial because he was afraid at the time of the examining trial to say that Glen Campbell was armed. A mail carrier with a felony record testified at the trial that the appellant, McIntosh, who also had a record of prior convictions for forgeries, had told him a day or so before the killing that he was going to kill Glen Campbell.

In the backdrop of the nature of the testimony produced at the trial, scantily summarized here, we cannot conclude that the change in the testimony of Christine Sandlin is of "such a conclusive character that the verdict most probably would not have been rendered and there is a strong probability of a miscarriage of justice unless the process be granted." For a collection of cases, see Ky.Digest, Criminal Law, ⊕997, particularly subsection (15).

The judgment is affirmed.